**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

JARELL D. TERRY,                                                                    PLAINTIFF
ADC #149998C

v.                                    2:20-cv-00057-BSM-JJV

ANGELA JENKINS,
Sergeant, ADC, *et al.*                                                       DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.   Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

## I. INTRODUCTION

Jarrell D. Terry ("Plaintiff") is a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC").   He has filed this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging that on June 26, 2019, Defendants Sergeant Angela Jenkins and Lieutenant Wanda Brooks Brown seized his legal documents and wrongfully denied him access to them for several months.   (Doc. No. 2.)   As a result, Plaintiff allegedly missed the deadline to respond to a Motion for Summary Judgment pending in *Terry v. Drummond,* 2:18-cv-110-JJV ("*Terry I*"), and the case was dismissed with prejudice.[1]   Plaintiff also says Defendant Deputy Warden James Dycus failed to take corrective action after learning Plaintiff's legal documents were being

---

[1] A review of the docket in *Terry I* demonstrates that on July 22, 2019, Plaintiff filed a Motion for Copies notifying the Court that he did not have access to his legal documents in the property room.   *See Terry I* at Doc. No. 114.   The Court granted the Motion, provided Plaintiff with a complete copy of the record, and gave him an extension until August 5, 2019, to file a response to the Motion for Summary Judgment.   *Id.* at Docs. 116, 117.   Plaintiff did not meet that extended deadline.   Thus, on August 6, 2019, the Court granted summary judgment to the Defendants on the merits of Plaintiff's claims, and the Eighth Circuit affirmed that ruling on appeal.   *Id.* at Docs. 118, 119, 134, 135.

wrongfully withheld.    (*Id.*)

Defendants have filed a Motion for Summary Judgment arguing the claims against them should be dismissed without prejudice because Plaintiff failed to properly exhaust his administrative remedies before filing this lawsuit.    (Doc. Nos. 14, 15, 16.)    Plaintiff has filed a Response.    (Doc. Nos. 18, 19, 20, 21, 22.)    After carefully reviewing the pleadings and for the following reasons, I recommend Defendants' Motion for Summary Judgment be GRANTED, Plaintiff's claims against Defendants be DISMISSED without prejudice, and this case be closed.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.    Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).    When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.    *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).    The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.    *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).    The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.    *Id.* (citations omitted).    A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.    *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).    Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.    *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465

(8th Cir. 2010).

## III.    ANALYSIS

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."    42 U.S.C. § 1997e(a).    The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court.    *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).    Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."    *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility.    *Id.*

The ADC policy in effect at the time of the alleged constitutional violations was Administrative Directive 14-16, which establishes as three-step grievance procedure.    (Doc. Nos. 14-1, 14-2.)    First, the inmate must attempt informal resolution of a problem by submitting a Unit Level Grievance Form to a designated problem solver *within fifteen days of the incident*.    (Doc. No. 14-2 at 5) (emphasis added.)    The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses,

and how the policy or incident affected the inmate submitting the form." (*Id*. at 5-6.) The problem solver must respond to the informal resolution within three working days. (*Id.* at 6-7.) Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance on the same Unit Level Grievance Form within three working days. (*Id*. at 7-9.) The warden or his designee must provide a written response to the formal grievance within twenty working days. (*Id*. at 10.) Third, an inmate who is dissatisfied with the warden's response or does not timely receive a response, must appeal within five working days to the appropriate ADC Assistant Director. (*Id*. at 10-12.) The ADC Assistant Director must provide a written response within thirty working days. (*Id*. at 12.) "A decision or rejection of an appeal at this level is the end of the grievance process." (*Id*.) Finally, Administrative Directive 14-16 includes the following warnings:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim. If this is not done, the lawsuit or claim may be summarily dismissed.

(*Id*. at 17-18.)

In her sworn Declaration, the ADC Inmate Grievance Coordinator says EAM-20-495 is the only relevant grievance.[2] (Doc. Nos. 14-1, 14-3, and 14-4.) On February 14, 2020, Plaintiff filed informal resolution EAM-20-495 alleging, as he does in this lawsuit, that on June 26, 2019,

---

[2] In an abundance of caution, Defendants also included EAM-20-365. (Doc. No. 14-5.) In that grievance, Plaintiff alleged that, in May 2019, a non-party officer wrongfully sprayed him and his legal documents with pepper spray. (*Id*.) He also said Defendants Brown and Jenkins failed to pack his t-shirt, presumably when his personal properly was put in storage while he was on behavior control status following the May 2019 use of force. (*Id*.) I agree with Defendants that EAM-20-365 is irrelevant to the claims Plaintiff is raising in this lawsuit about the June 26, 2019 seizure of his legal documents. And, I note EAM-20-365 was rejected, without a ruling on the merits, because it was untimely filed. (*Id*.)

Defendants Jenkins and Brown wrongfully seized his legal documents and held them in the property room for three months.    (*Id*.)    When he did not receive a response from the problem solver within three working days, Plaintiff filed a grievance raising the same issue on February 23, 2020.[3]    (*Id.*)    On February 25, 2020, the grievance was rejected as untimely because the informal resolution was filed *eight months* after the complained of conduct and not within fifteen days, as required by the ADC's grievance procedure.    (*Id.*)    The ADC Assistant Director affirmed that decision on appeal without reaching the merits of Plaintiff's allegations.    (*Id*.)    As previously stated, to satisfy the PLRA, a prisoner must properly comply with all steps of the prison's grievance procedure.    *Woodford*, 548 U.S. at 90 (exhaustion "means using all steps that the agency holds out and doing so properly so that the agency addresses the issues on the merits").    Plaintiff did not do so in EAM-20-495.    Thus, it is not proper exhaustion of the claim he is raising against Defendants in this lawsuit.

In his Response to the Motion for Summary Judgment, Plaintiff says that on July 26, 2019, he filed an unnumbered informal resolution alleging Defendants Brown and Jenkins were wrongfully withholding his legal mail.    (Doc. Nos. 18, 19, 20.)    Because the provided copy is illegible, it is impossible to determine if that is a correct characterization of claim raised the informal resolution.    (Doc. No. 19 at 3.)    Nevertheless, I will presume the truth of Plaintiff's assertion.    When Plaintiff did not receive a timely response to the informal resolution, he filed a grievance renewing his allegations on August 4, 2019.    (*Id*.)    On September 12, 2019, the grievance officer rejected the grievance, without giving it a number or entering it into the ADC's records, because Plaintiff did not include a date by the "Step Two" portion of the form or explain

---

[3] The informal resolution and grievance are written on the same form.    (*Id*.)

why the issue was unresolved during the informal resolution process. (Doc. No. 14-3 at 2, No. 19 at 4.) However, the copy of the informal resolution filed in the record by Plaintiff does contain that information. (Doc. No. 19 at 3.) It is possible Plaintiff added the date and explanation after he received the September 12, 2019 Rejection Notice. Or, it is possible the grievance officer improperly rejected the undated grievance. In either case, it was Plaintiff's obligation to either resubmit the grievance with the missing information or appeal the wrongful rejection of his grievance to the ADC Assistant Director. Because Plaintiff did not do so, as required by the ADC's exhaustion policy, he did not properly exhaust his administrative remedies. *See Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (explaining that a prisoner must pursue "the prison grievance process to its final stage"); *King v. Iowa Dept. of Corr.*, 598 F.3d 1051, 1052-53 (8th Cir. 2010) (finding improper exhaustion when a prisoner failed to complete all stages of the prison's grievance procedure).

Importantly, Plaintiff has not asserted or presented any evidence suggesting he was prevented from timely, properly, and fully exhausting his available administrative remedies within the ADC's grievance procedure before bringing his claims in federal court. *See* 42 U.S.C. § 1997e(a) (prisoners must exhaust all "available" administrative remedies); *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (administrative remedies are "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). Accordingly, I recommend the Motion for Summary Judgment be granted, and Plaintiff's claims against Defendants be dismissed without prejudice due to a lack of exhaustion. *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha"

mechanism to keep him out of court.    To the contrary, the exhaustion requirement plays a critical

role in the remedy process.    The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the
> quality of prisoner suits; to this purpose, Congress afforded corrections officials
> time and opportunity to address complaints internally before allowing the initiation
> of a federal case. In some instances, corrective action taken in response to an
> inmate's grievance might improve prison administration and satisfy the inmate,
> thereby obviating the need for litigation. In other instances, the internal review
> might filter out some frivolous claims. And for cases ultimately brought to court,
> adjudication could be facilitated by an administrative record that clarifies the
> contours of the controversy.

*Johnson,* 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an

opportunity to correct its own mistakes with respect to the programs it administers before it is

haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. No. 14) be GRANTED;

Plaintiff's claims against Defendants Jenkins, Brown, and Dycus be DISMISSED without

prejudice; and this case be CLOSED.

2.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

appeal from any Order adopting these recommendations and the accompanying Judgment would

not be taken in good faith.

DATED this 29th day of July 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE